## PATTON v. FIRST NAT. BANK & TRUST CO.

No. 26217. March 31, 1936.

454

John H. Scriba, for plaintiff in error.

Charles P. Gotwals John T. Gibson, Wm. A. Killey, and James D. Gibson, for defendant in error.

PER CURIAM. Defendant in error the First National Bank & Trust Company of Muskogee, will hereinafter be designated plaintiff as it appeared in the trial court, and plaintiff in error, J. W. Patton, defendant as in the trial court.

On December 16, 1924 a contract was entered into by and between the First National Bank of Muskogee, a corporation, and J. W. Patton and his wife, Annie L. Patton, in which the bank agreed to sell an equity in 140 acres of land to Patton and his wife for $2,000, to be evidenced by five $400 notes, payable, respectively, in the years 1925, 1926, 1927, 1928, and 1929. There was a $4,200 mortgage on the land, held by the Missouri State Life Insurance Company, which Patton was to assume.

To secure the bank for the $2,000, or five $400 notes covering purchase price of the equity in the land, Patton and wife gave a mortgage on a 20-acre piece of land which they owned.

The bank also contracted to loan Patton $700, which was to be evidenced by notes. Upon payment of the five $400 notes, the bank agreed to convey the 140 acres of land to Patton by warranty deed, excepting the $4,200 lien of the insurance company mortgage.

Sometime after the contract was entered into, the name of the bank was changed to the First National Bank & Trust Company of Muskogee, the plaintiff herein.

On May 15, 1932, plaintiff filed its petition against J. W. Patton, Dottie Patton, Annie L. Patton, Missouri State Life Insurance Company, a corporation and S. R. Cozzart, as defendants, in the district court in Wagoner county, Okla., seeking a judgment in the sum of $700, with interest at 5 per cent. per annum from December 1, 1931, as the balance due on two $400 notes, out of a series of five $400 notes dated December 16 1924, with abstract fees, 10 per cent. attorney fees, and to foreclose a mortgage on the 20-acre tract of land owned by the Pattons.

Defendant Missouri State Life Insurance Company waived summons and entered its appearance. All the other defendants were served with summons but none of the defendants except Patton filed answer or other pleadings, and none of them save defendant J. W. Patton has appeaꞌed.

On June 6 1932, defendant filed an answer with cross-petition and later filed an amended answer and cross-petition and later an amendment thereto.

Defendant's answer denies all the allegations in plaintiff's petition; denies that he received from plaintiff the $2,000 evidenced by the five $400 notes; denies that he ever received the $700 which the plaintiff contracted to loan him, or that it was credited on the $2,000 indebtedness; he then alleges that he paid all of the five $400 notes with

interest; that in part payment thereof he turned over to plaintiff a piece of residential property in Muskogee, worth $1,300, for which he was entitled to credit on the notes. Defendant alleges, however, that he had sold this property to one F. A. Knight and took back three notes, one for $234 and two for $233 each, secured with a mortgage on the property, and that he signed some kind of a conveyance shown on the record to be a release of the mortgage. Defendant alleges that this payment was not credited on the notes herein sued upon nor on the first mortgage, but that he was handed a $500 note dated December 16, 1924, marked paid.

Defendant alleges that plaintiff falsely and fraudulently induced him to execute six notes, one for $500 and five for $400 each, aggregating $2,500 instead of $2,000 and that he received no consideration for the $500 note and asks $891.50 actual damages and $1,000 punitive damages.

Defendant, for further cause of action in defense, alleges that the bank (plaintiff's predecessor) collected from him usurious interest on ten notes which he has paid, in the amount of $3,657, and asks judgment therefor.

Defendant alleges that plaintiff took advantage of his ignorance and induced him by flattery, fraud, and deceit to sign the notes, and that defendant did not know until several years thereafter that he had signed six notes instead of five, and that he had asked many times for an accounting, which was refused, and that he never had an understanding of his financial liabilities.

Defendant's answer and cross-petition, with amendments thereto, are voluminous, contradictory, and duplicitous, complicating the issues with numerous complexities.

To the answer, amended answer, and cross-petition, plaintiff filed its answer and reply putting in issue all the material allegations thereof.

On February 27, 1933, plaintiff moved to have a referee appointed to find facts and conclusions of law and report the same to the court, and on March 6, 1933, the motion was sustained and W. B. Moss was appointed referee, "to take and hear the evidence on all issues of fact herein, to make findings of facts and conclusions of law on all issues of fact and law and to report the same to this court, with recommendations (and with the testimony taken if either of the parties ordered the same transcribed and pay therefor) without undue delay."

On October 2, 1933, W. B. Moss filed his resignation as referee. On October 7, 1933, defendant filed a motion for a jury trial. On October 19, 1933, defendant's motion for a jury trial was overruled, and the resignation of W. B. Moss, referee, accepted, and P. L. Newton appointed referee to which defendant excepted.

The above narrative of the facts is sufficient for us to proceed with the disposition of the alleged errors.

In defendant's brief, three errors of the trial court are assigned, as follows:

(1) The trial court erred in refusing the defendant a trial by jury.

(2) The trial court erred in referring the case to a referee.

(3) The trial court erred in overruling and denying defendant's objection and exception to the findings and recommendations of the referee and again refusing the defendant a trial by jury and entering judgment in favor of plaintiff.

We will consider assignments of error 1 and 2 together:

(1-2) On March 6, 1933, the trial court appointed a referee, to which appointment the defendant made no objection nor did defendant indicate that he was dissatisfied with the order of reference, until some seven months later, when he moved the court for a jury trial. This passive acceptance of the order of reference is tantamount to consent to the reference of the case. It is true that defendant excepted to the appointment of P. L. Newton as referee to succeed W. B. Moss, but this exception was not saved as to the original order of reference made some seven months prior. Defendant also excepted to the overruling of his motion for a trial by jury, which was made seven months after the order of reference was made, and if the order of reference was proper when made (and it must have been, for defendant made no objection at the time) and with no changes in the pleadings or issues involved in the meantime, the trial court acted within its discretionary power in overruling defendant's motion for a trial by jury. Federal Surety Co. v. L. B. Adams Lbr. Co., 170 Okla. 445, 40 P. (2d) 1057.

Section 376, O. S. 1931, provides that the court on its own motion may direct a reference, "Where the trial of an issue of fact shall require the examination of mutual accounts or where the account is on one side only, and it shall be made to appear to the court that it is necessary that the party on the other side should be examined as a wit-

ness to prove the account; in which case the referees may be directed to hear and report upon the whole issue," etc.

Where an action requires an examination of mutual accounts, the court may upon its own motion direct a reference, and an objection upon the part of either party to having the matter referred is of no avail. Hale v. Marshall, 52 Okla. 688, 153 P. 167; Grainola State Bank v. Shellenberger, 81 Okla. 204, 197 P. 436.

The pleadings disclosed a case wherein the trial of the issues required the examination of mutual accounts; involved the alleged collection of usurious interest on several notes bearing many indorsements of partial payments; of note renewals with interest calculations; property transfers and complex transactions, all of which were properly referred for findings. Frear v. State ex rel. Caldwell, 76 Okla. 213, 184 P. 771.

Third assignment of error.

(3, 4, 5.) On the 29th day of November, 1933, a trial was had before Referee P. L. Newton, plaintiff appearing by attorney and defendant Patton appearing in person and by attorney. On March 21, 1934, findings and recommendations were filed in the trial court by which it was recommended that judgment be rendered for plaintiff in accordance with the prayer in plaintiff's petition, and for foreclosure of the mortgage sued on; for all costs, including attorney's fees and a reasonable fee for the referee.

On March 22, 1934, plaintiff filed a motion to confirm the report of the referee, and on March 30, 1934, defendant filed a motion to set aside and overrule the findings and recommendations of the referee and to set the cause for trial by jury. Later, amendments to this motion were filed.

On October 15, 1934, the court overruled defendants' motion to set aside the report of the referee and for a jury trial, and sustained plaintiff's motion for confirmation and confirmed the report of the referee. On October 17, 1934, defendant filed a motion for a new trial, which was overruled on November 19, 1934.

If the evidence at the trial before the referee tends to support the findings and conclusions as reported to the trial court, then the trial court did not err in confirming the report and rendering judgment in accordance therewith.

The plaintiff contends however, that the findings and conclusions reported to the trial court by the referee were conclusive, and that the court was without authority to review the evidence taken before the referee for the reason the defendant did not file a motion for a new trial within three days after the filing of the referee's report. With this contention, we cannot agree. In First National Bank of Shawnee v. Oklahoma National Bank of Shawnee, 29 Okla. 411, 118 P. 574, it was held:

"Where a referee, in obedience to an order of the court, reports to the court as a part of his report the evidence heard before him, the same is thereby made a part of the record, and is subject to review by virtue thereof, and a bill of exception is unnecessary."

In the order of reference the court directed the referee to report the evidence if either of the parties would pay the cost thereof, and in the report by the referee he says:

"I realize that my findings are nothing more than recommendations to the court and that the court is not bound thereby, but should examine the evidence submitted herewith and render such judgment as equity demands."

This undoubtedly incorporates the evidence into the record. A motion for a new trial filed within three days after the approval by the court of the report of the referee is the proper procedure for a review of the errors. Jarvis v. Great Bend Oil Co., 49 Okla. 175, 152 P. 372.

The evidence being properly in the record we have carefully studied all the testimony and scrutinized the exhibits in connection therewith and find that the findings of facts and conclusions of law reported by the referee are supported by the evidence. The report of a referee, to whom the case is referred for hearing of testimony and to make findings of fact and conclusions of law and which has been approved by the court, will not be disturbed on appeal unless clearly against the weight of the evidence. Titus v. Miller, 171 Okla. 549, 43 P. (2d) 705.

The trial court did not err in denying defendant a trial by jury and in referring the case to a referee, confirming the report of the referee, and rendering judgment thereon.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys F. A. Darst, S. F. Parks, and W. H. Kornegay in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Darst and approved by Mr. Parks and Mr. Kornegay, the cause was assigned to a Justice of this court for examination and

report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, and CORN, JJ., concur.